DE LASKI & THROPP CIRCULAR WOVEN TIRE CO. et al. v. FISK RUBBER CO.

(District Court, D. Massachusetts. July 16, 1912.)

No. 121 (No. 593, C. C.).

PATENTS (§ 328*)—ANTICIPATION—APPARATUS FOR MAKING PNEUMATIC TIRES.
    The Thropp patent, No. 822,561, for apparatus for manufacturing wheel tires for automobiles, claims 1 and 2, *held* void for anticipation.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Equity. Suit by the De Laski & Thropp Circular Woven Tire Company and others against the Fisk Rubber Company. On final hearing. Decree for defendant.

Emery & Booth, John P. Bartlett, and E. Clarkson Seward, for complainants.

William Quinby, for defendant.

BROWN, District Judge. The bill alleges infringement of claims 1 and 2 of letters patent No. 822,561 to P. D. Thropp for apparatus for manufacturing wheel tires. Application was filed November 1, 1905; the patent is dated June 5, 1906.

The invention relates especially to apparatus for holding a clencher tire in position during the vulcanizing process.

1. Tire-forming apparatus comprising an annular core or mandrel, annular pressure-rings arranged to engage the clencher edges of the tire leaving the outer body portion of the tire exposed and means for forcing the pressure-rings into a predetermined position with respect to the core or mandrel.

2. Tire-forming apparatus comprising an annular core or mandrel provided with an inwardly-extending rib, pressure-rings arranged to engage the clencher edges of the tire on opposite sides of the said rib leaving the outer body portion of the tire exposed and means for forcing the pressure-rings against the opposite sides of the rib.

Complainants say the invention lies in the apparatus for molding and giving pressure to the tire casing during the vulcanization; that the apparatus is adapted for use in producing automobile tire casings by what is called the "one cure, wrapped tread method," in which the inner casing, including the tread, is built up on a core or mandrel at one time, of green or unvulcanized stock. The side pressure-rings are then applied, which inclose the inner or clencher part of the tire, leaving the outer body portion uninclosed. The whole is then spirally wrapped with a porous tape, and so wrapped is submitted to a vulcanizing heat, after which the wrapping, pressure-rings, and mandrel or core are removed and the casing is entirely completed.

Complainants state that many advantages result from the use of this apparatus, both in the quality of the product through the avoidance of pinching or of buckling, which is said to attend the use of the full or closed mold of the prior art, by reason of the difficulty in estimating accurately the amount of rubber necessary for the proper filling of the closed mold, and in the ease, speed, and lessened cost of manufacture.

It is claimed that the patent in suit is basic, being the first apparatus adapted for the manufacture of one-cure open-cure, wrapped tread tire casings in which substantially the inner half of the casing (that is, the clencher part) is molded, and the outer half open cured.

The utility of the apparatus is shown by testimony to the effect that by July of the year 1910 19 manufacturers of automobile tire casings used this device and paid royalties therefor to the complainants. The most important defense is that of invalidity of the patent in view of prior patents and of the prior unpatented art.

The defendant states that the Thropp patent shows an open mold

as distinguished from a closed mold and that an open mold is in all respects like a closed mold, except that the outer edges of the mold sections are cut away to expose a part of the sheath. In both forms the mold sections must inclose and engage the clencher part of the sheath.

The defendant has introduced a large amount of testimony as to devices of the prior art preceding Thropp's date of invention. Thropp claims as his date of conception February 1, 1905. In interference proceedings the patentee, Thropp, on March 12, 1907, filed a sworn preliminary statement in the Patent Office to the effect that he conceived the invention and first made a drawing or sketch of it about February 1, 1905; that the invention was first disclosed to others on or about March 1, 1905; that a full size working model of the invention was made on or about July 15, 1905; and that he first reduced the invention to practice on or about July 20, 1905.

The defendant has produced voluminous evidence, called the Akron evidence, as to the making of designs for molds by the B. F. Goodrich Company; the manufacture of molds; and the use of these molds in January, 1905, for the manufacture of single open-cure wrapped tread automobile tires. It has also proved that the first four of these tires were delivered to the Baker Electric Vehicle Company, of Cleveland, Ohio, January 10, 1905. Drawings for an open heat mold, dated December 22, 1904, are produced, which show a mold comprising a mandrel and annular pressure rings arranged to engage the clencher edges of the tire, leaving the outer body portion of the tire exposed; also open heat molds for a fillet to be used in connection with the pressure rings.

In the patent in suit it is said:

"The outer edges of the pressure-rings are made quite thick, as shown at 11 and 12, in order to make them firm.  *  *  *"

Also the following:

"In operation, the several elements of the tire having been placed in position on the core and the pressure-rings forced into position by the bolts 8, filling-rings 17 18 of wedge shape in cross-section are placed against the sides of the tire above the thick edges 11 and 12 of the pressure-rings, and the whole is wound with a wrapping of tape 19, the filling-pieces 17 18 serving to impart the pressure of the winding tape to the sides of the tire to hold the latter in position during the vulcanizing process."

The fillet molds shown in the Akron evidence are for producing filling pieces corresponding to those shown in the patent in suit. The filling-rings are elements of claim 3, but are not elements of claims 1 and 2. The omission of these wedge-shaped filling-pieces from the apparatus of the patent in suit would leave a portion of the outer tread at a considerable distance from the winding tape, so that the winding tape would not exert its pressure upon parts of the outer portion of the tire. Nevertheless, the defendant has shown a device which in all substantial particulars is an anticipation of what is shown in the drawings of the patent in suit, and which is doubtless apparatus for holding a clencher tire in position during the vulcanizing process, in connection with a winding tape. If the claims in suit can be distin-

guished by the omission of the fillets, and cover apparatus in which the outer edges of the pressure-rings are made sharper and longer so as to dispense with the use of fillets, this must be regarded as merely a difference in form which does not meet the defense that the prior art shows rigid mold sections for the clencher or inner part of the tire adapted to be used with a cross wrapper for the curing of tire casings in open heat.

The complainants contend that this device is not proved by competent evidence to have existed or to have been used. Upon a reading of the entire testimony and of the full discussion of this matter upon the defendant's brief, I am of the opinion that the device is proved not only by the direct and positive testimony of competent witnesses, but that the corroborative testimony, consisting of drawings, mold cards, invoices, and entries, establishes beyond a reasonable doubt the facts upon which this defense rests. This testimony comes not only from the Goodrich Company itself but from the Baker Motor Vehicle Company and from the Williams Foundry & Machine Company, manufacturers of molds.

The complainants say further that the apparatus shown is part of a two cure apparatus, and is not adapted to perform the functions of the patent in suit. The materiality of this objection is doubtful. The patent in suit says nothing as to a one cure process or a two cure process. In the two cure process the carcass of the tire casing, exclusive of the tread portion, is built on a mandrel and semicured in a closed mold, the tread is built up on a separate mandrel wrapped spirally with a fabric wrapper and also semicured, and the two semicured parts are united by cement and the whole spirally wrapped and subjected to a second cure in open heat. The patent in suit is broad enough to cover the use of the apparatus with either a wholly uncured carcass or a semicured carcass. The patent in suit upon the present record and upon the briefs can hardly be regarded as for a new method of curing. The open heat wrapped tread single cure process was old. The use of the spiral winding of tape instead of a closed mold, and the open wrapped tread single cure process for the purpose of obviating pinching is shown in the patent to Cowen 565,854, August 11, 1896. Claim 1 of said patent is as follows:

"The herein-described method of manufacturing pneumatic tires, which consists in building up an endless tube of or containing unvulcanized rubber; temporarily covering the tread surface of the inflated unvulcanized tube with a fabric adapted to make fine indentations therein; securing the said tread covering fabric temporarily in position pressing upon the said tube; vulcanizing the tube while so covered, and then removing the temporary covering to leave the completed vulcanized tube ready for use, substantially as described."

Defendant has properly suggested that the form of clencher cavity shown in the Thropp patent is not new with Thropp and that various forms of open molds in the prior art had means for holding the inner portion of a tire during an open cure. The contention that the Goodrich Company's apparatus was for a two cure process, though of doubtful materiality, is not satisfactorily established. Thropp the patentee,

testifies upon examination of the drawings that they represent a two cure apparatus and not a single cure apparatus. This is based upon the contention that the drawings of the Baker device include not only defendant's Exhibits 14 and 11 of open molds, but also Exhibit 12 of a closed mold. On the other hand, is the testimony that Exhibit 12 of a closed mold, though marked "Baker special" was not a part of the device in use and it may be observed that the closed mold Exhibit 12, marked "C 613," is about a month earlier in date than Exhibits 11, marked "C 627," and 14, marked "C 626," and of other exhibits consecutively numbered and dated at about the same date in December.

Any inference to be drawn from Exhibit 12, however, is insufficient to meet the positive testimony of a number of witnesses that the process used with the apparatus of Exhibits 14 and 11 was a one cure process.

The defendant also introduces testimony, called the Detroit evidence, of witnesses connected with the Morgan & Wright Rubber Works. This establishes the conception of making a tire sheath by the single open cure wrapped tread process prior to September, 1904; the construction of apparatus and the making of a single sheath, and subsequent developments of open mold construction which led to the production of apparatus substantially like that of the patent in suit. There is also further evidence from the employés of the Hartford Rubber Works, located at Hartford, Conn., showing that as early as 1894 there was used a somewhat crude device for the manufacture of open single cure wrapped tread tires.

There is also evidence, called the Chicopee evidence, from employés of the Fisk Rubber Company, which shows devices for an open one cure wrapped tread process.

It seems unnecessary upon the question of anticipation to refer specifically to devices other than the devices proved in the Akron defense, further than to say that they thoroughly establish the fact that the single cure wrapped tread process was familiar in the art, and therefore that the patent in suit cannot be construed with the breadth that would be given to it if it were for the first apparatus which embodied this method of curing tires. It may, however, be properly considered upon the evidence in the case as for apparatus which comprehends rigid molds for the inner part of the tire, capable of exerting considerable molding pressure at that point, while leaving the outer part of the casing free for the open cure wrapped tread process. So considered I am of the opinion that it is anticipated by the production and use of substantially similar apparatus by the Goodrich Manufacturing Company, and that anticipation is not avoided by the fact that in the claims in suit the fillets are omitted. The lengthening of the edges of the pressure-rings so as to obviate the use of fillets is not indicated in the specification of the patent in suit; and if the omission of fillets from claims 1 and 2 is sufficient to support the inference that the patentee had in mind a structure of other form than that shown in the drawings and described in the specification, it must be upon the view

that such a change was obvious. There is described in the patent in suit nothing patentable over the prior Goodrich structure, even if complainant's pressure-rings were so constructed as to obviate the use of fillets.

I am of the opinion that claims 1 and 2 of the patent in suit are invalid, by reason of anticipation.

The bill will be dismissed.